**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| CROSSPOINT CHURCH, <br><br> Plaintiff, <br><br> v. <br><br> A. PENDER MAKIN, in her official capacity as Commissioner of the Maine Department of Education, and JEFFERSON ASHBY, EDWARD DAVID, JULIE ANN O'BRIEN, MARK WALKER, and THOMAS DOUGLAS, in their official capacities as Commissioners of the Maine Human Rights Commission. <br><br> Defendants. | Civil Action No. <u>1:23-cv-00145-JAW</u> |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

After forty years of unconstitutional religious discrimination in Maine's school choice program, the State continues to unconstitutionally exclude particular religious schools from participating in the state's school choice program because of their religious beliefs. In Maine, local "school administrative units" (SAUs) that do not operate their own secondary schools may pay tuition for resident students to attend either a private secondary school or another SAU's secondary school. For its first 100 years, the program permitted participation by private religious schools, but from 1980 until the Supreme Court's decision in *Carson v. Makin*, 142 S. Ct. 1987 (2022), the state excluded these schools from the tuitioning program (the "sectarian exclusion").

Until recently, the state also exempted religious schools from certain nondiscrimination provisions to accommodate their religious beliefs. Anticipating the Supreme Court's decision in

*Carson*, however, the Legislature narrowed the religious exemption in 5 M.R.S.A. § 4602. The exemption previously covered all religious schools, but the amendment narrowed it to protect only religious schools that do not participate in the tuitioning program. Without the exemption, religious schools are subject to investigations, complaints, and large fines for offering instruction consistent with their sincerely held religious beliefs. This "poison pill" effectively deters religious schools from participating and thereby perpetuates the religious discrimination at the heart of the sectarian exclusion. From the start, Maine's Attorney General and the then-Speaker of the House of Representatives admitted this scheme was intentional. The Legislature crafted the poison pill explicitly to circumvent the Supreme Court's decision in *Carson*. The poison pill also specifically targeted Plaintiff, who operates the school that two of the *Carson* plaintiffs attended. Defendants' enforcement of the Maine Human Rights Act to discriminatorily exclude Plaintiff, who operates an otherwise qualified school, from becoming approved for tuition purposes violates the Free Exercise, Establishment, and Free Speech Clauses of the U.S. Constitution. Pursuant to Federal Rule of Civil Procedure 65, Plaintiff respectfully moves this Court for a preliminary injunction to prevent Defendants from enforcing the poison pill pending resolution of this case.

## STATEMENT OF FACTS

Plaintiff Crosspoint Church ("CPC"), a Christian church located in Bangor, Maine, runs Bangor Christian Schools ("BCS"), a preschool-12 religious school. BCS is a ministry of CPC founded in 1970 "to assist families in educating the whole child by encouraging spiritual maturity and academic excellence in a supportive environment." BCS Student Handbook at 1 (attached as Exhibit A). Plaintiff runs BCS in accordance with its Statement of Faith, and its religious beliefs are central to BCS's educational mission. *See* Ex. A at 3–6. Accordingly, BCS

considers prospective students' spiritual fit in determining admissions, and parents agree when they join BCS that they support and will cooperate with the school's religious mission and educational philosophy. Ex. A at 7. Because they serve as Christian role models to the students and are responsible for inculcating BCS's religious beliefs and values, BCS employees must agree with the school's Statement of Faith and educational objectives. *Id.*

As explained in BCS's Statement of Faith, Plaintiff believes the Bible is inerrant and the "final authority in all matters," Ex. A at 1, 4–5. Plaintiff believes that the only method of salvation is by grace, through repentance and faith in Jesus Christ. *Id.* at 4–5. Plaintiff believes that marriage is defined by God to join one man and one woman in a covenantal union and that sexual activity is not to occur outside of marriage. *Id.* Plaintiff also believes that a person's "gender is sacred and established by God's design." *Id.* at 7. Accordingly, BCS's code of conduct prohibits students from, among other things, engaging in sexual activity outside of marriage (as defined in the Statement of Faith) or identifying as a gender other than their biological sex. *Id.* A student who persistently and unrepentantly counter-witnesses—that is, advocates beliefs contrary to BCS's Statement of Faith—is considered not to be in agreement and cooperation with BCS's mission and thus subject to removal from the school. *See id.* at 8.

Maine's tuitioning program is a school choice program for families residing in school administrative units that do not maintain a secondary school. 20-A M.R.S.A. § 5204(4). Families residing in tuitioning SAUs may send their child to the public or approved private school of their choice at the SAU's expense, up to the state tuition cap. 20-A M.R.S.A. § 5204. Until 1981, religious schools were eligible to become approved for tuition purposes. *Carson v. Makin*, 142 S. Ct. 1987, 1994 (2022). However, after the Maine Attorney General issued an opinion concluding that allowing religious schools to participate violated the First Amendment's Establishment

Clause, the Legislature amended the tuitioning law in 1981 to require private schools be "nonsectarian" to participate. *Id.*; 20-A M.R.S.A. § 2951(2). As a result of this sectarian exclusion, BCS was no longer eligible to participate in the tuitioning program, and eligible families could no longer use their tuition benefit at BCS. *See Carson*, 142 S. Ct. at 1994.

But the state did not enforce the sectarian exclusion to exclude *all* religious schools. Instead, the Education Commissioner administered the sectarian exclusion to exclude only certain religious schools depending on their religious beliefs. As the Education Commissioner explained, the Education Department

> consider[ed] a sectarian school to be one that is associated with a particular faith or belief system and which, in addition to teaching academic subjects, promotes the faith or belief system with which it is associated and/or presents the material taught through the lens of this faith. While affiliation or association with a church or religious institution is one potential indicator of a sectarian school, it is not dispositive. The Department's focus [was] on what the school teaches through its curriculum and related activities, and how the material is presented.

*Carson v. Makin*, 979 F.3d 21, 38 (1st Cir. 2020) (quoting interrogatory response of the Maine Education Commissioner). In practice, the Education Department deemed schools operated by religious organizations sufficiently nonsectarian when they taught what the Department considered "universal spiritual values." Stipulated Record, *Carson v. Makin*, 401 F. Supp. 3d 207 (D. Me. 2019) (No. 1:18-cv-327-DBH), ECF No. 24 (hereinafter "*Carson* Stip. R.") Ex. 2 at 17–18; *see* Transcript of Oral Argument at 63–65, *Carson v. Makin*, 142 S. Ct. 1987 (2022) (No. 20-1088). And it excluded schools holding so called "discriminatory" beliefs, such as those teaching a particular religion as true or employing only co-religionists. *See Carson* Stip. R. Ex. 3 at 3–4 (Interrog. Resp. of Educ. Comm'r); *id.* Ex. 2 at 25–47 (H. Legis. R., 1st Regul. Sess., at 582–89 (Me. 2003)). Thus the sectarian exclusion operated to allow religious schools to participate in the tuitioning program if, and only if, they held religious beliefs the State approved. After three

families (including families whose children attended BCS) challenged the sectarian exclusion, the Supreme Court invalidated it, because the Exclusion "operates to identify and exclude otherwise eligible schools on the basis of their religious exercise" in violation of the First Amendment's Free Exercise Clause. *Carson*, 142 S. Ct. at 1994–95, 1997, 2002.

Throughout the *Carson* litigation, Commissioner Makin strove to deter Plaintiff from agreeing to participate in the tuitioning program if its students' suit succeeded. To undermine the *Carson* plaintiffs' standing, Commissioner Makin contended that if the state approved BCS for the tuition program, provisions of the Maine Human Rights Act ("MHRA") would require BCS to hire employees that do not share its religious beliefs.[1] The U.S. Court of Appeals for the First Circuit ultimately rejected the Commissioner's standing argument, and it reserved the question of how the MHRA applies to BCS because of constitutional and statutory exemptions available to religious organizations. *See Carson*, 979 F.3d at 28, 31.

While the *Carson* petition for certiorari was pending before the Supreme Court, the Maine Legislature passed a new law designed to undermine the *Carson* plaintiffs' standing. The law created a poison pill in the tuitioning program designed to deter disfavored religious schools, including BCS, from participating if the Court invalidated the sectarian exclusion. "An Act to Improve Consistency in Terminology and within the Maine Human Rights Act," P.L. 2021, Ch. 366, § 19, amended the MHRA's educational discrimination provision (5 M.R.S.A. § 4602) in two pertinent ways: 1) it narrowed the preexisting religious exemption for the sexual orientation and gender identity provisions to protect only religious schools that do not participate in the tuitioning program, and 2) it added religion as a protected class and prohibited discrimination against students' religious expression without providing an exemption for religious schools. P.L.

---

[1] Def.'s Mot. for Summ. J. at 7–8, 13–14, *Carson*, 401 F. Supp. 3d 207 (D. Me. 2019) (No. 1:18-cv-327-DBH), ECF No. 29; Brief for Appellee at 22–23, *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020) (No. 19-1746).

2021, Ch. 366, § 19, *codified at* 5 M.R.S.A. § 4602(5)(C), (D). As a result, if the State approved BCS for participation in the tuitioning program, the poison pill would prohibit BCS from teaching from its religious perspective, requiring parents and students to agree with BCS's religious beliefs and religious educational mission, and requiring students to adhere to a code of conduct consistent with BCS's religious beliefs. Violations of the MHRA carry thousands of dollars in civil penalties and attorney's fees liability. 5 M.R.S.A. §§ 4613(2)(B)(7), 4614.

Commissioner Makin unsuccessfully invoked the poison pill to attack the *Carson* plaintiffs' standing before the Supreme Court. *See* Brief of Respondent at 54, *Carson*, 142 S. Ct. 1987 (2022) (No. 20-1088); *Carson*, 142 S. Ct. at 1998 n.*. Now, with the sectarian exclusion invalidated, BCS is eligible to participate in the tuitioning program, but the liability the poison pill imposes prevents it from doing so without relinquishing its religious identity. If the poison pill were enjoined, BCS is eligible to and would apply to participate in the tuitioning program.

## LEGAL STANDARD

A "district court faced with a motion for a preliminary injunction must weigh four factors: '(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.'" *Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 48 (1st Cir. 2013) (quoting *United States v. Weikert*, 504 F.3d 1, 5 (1st Cir.2007)); *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008). "[W]hile all four factors are important," the plaintiff's likelihood of success on the merits carries the most weight. *Swarovski*, 704 F.3d at 48; *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006).

## ARGUMENT

Plaintiff is likely to succeed in showing that Maine's efforts to exclude Plaintiff from the tuitioning program violate the Free Exercise Clause, causing irreparable harm that is neither equitable nor in the public interest. Plaintiff is entitled to a preliminary injunction that will allow it to participate in the tuitioning program.

**I.   Plaintiff is likely to succeed on the merits.**

**A.      The poison pill violates the U.S. Constitution's Free Exercise Clause.**

Plaintiff is likely to succeed in its claim that the portions of P.L. 2021, Ch. 366, § 19, codified at 5 M.R.S.A. § 4602(5)(C), (D), violate the Free Exercise Clause. The Free Exercise Clause prohibits government from burdening a plaintiff's "sincere religious practice pursuant to a policy that is not neutral or generally applicable . . . unless the government can satisfy strict scrutiny by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022) (quotations omitted). The poison pill substantially burdens Plaintiff's sincere religious exercise. After *Carson*, Plaintiff is eligible to participate in the tuitioning program, but if Plaintiff does so, the poison pill will prohibit it from operating as a religious school. Putting Plaintiff to the choice of participating in a generally available benefit program or surrendering its constitutionally protected religious exercise penalizes its religious exercise and constitutes a substantial burden. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) ("[W]hen the State conditions a benefit in this way, . . . the State has punished the free exercise of religion: 'To condition the availability of benefits . . . upon [a recipient's] willingness to . . . surrender[ ] his religiously impelled [status] effectively penalizes the free exercise of his constitutional liberties.'") (quoting *McDaniel v. Paty*, 435 U.S. 618, 626 (1978) (plurality

opinion); *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 217–19 (2013) (holding that government may not condition benefits on the recipient relinquishing constitutional rights). Violations of MHRA carry substantial monetary penalties and potential attorney's fees liability, 5 M.R.S.A. §§ 4613(2)(B)(7), 4614, which also constitute a substantial burden, *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 691 (2014). Plaintiff also reasonably fears enforcement: the Education Commissioner's briefing to the Supreme Court in *Carson* threatened to enforce 5 M.R.S.A. § 4602 against Plaintiff if it participated in the tuitioning program,[2] and Attorney General Frey's June 21, 2021 press release specifically identified Plaintiff as an enforcement target.[3]

A law that "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way" is not generally applicable. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). A law "will not qualify as neutral if it is 'specifically directed at . . . religious practice,'" such as "if it 'discriminate[s] on its face,' or if a religious exercise is otherwise its 'object.'" *Kennedy*, 142 S. Ct. at 2422 (quoting *Emp't Div, Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 877 (1990); *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993)). Failing either neutrality or general applicability triggers strict scrutiny. *Id*. Moreover, "[a] plaintiff may also prove a free exercise violation by showing that 'official expressions of hostility' to religion accompany laws or policies burdening religious exercise"; in such cases the Supreme Court has "set aside such policies without further inquiry." *Id.* at 2422 n.1 (quotation omitted).

---

[2] *See* Brief for Respondent at 54, *Carson v.* Makin, 142 S. Ct. 1987 (2022) (No. 20-1088).
[3] *Statement of Maine Attorney General Aaron Frey on Supreme Court Decision in Carson v. Makin* (June 21, 2022), https://www.maine.gov/ag/news/article.shtml?id=8075979.

**1. The poison pill targets Plaintiff's religious exercise.**

The poison pill is not neutral. It is designed to exclude Plaintiff from the tuitioning program, because, in the Maine Attorney General's words, Plaintiff's specific religious beliefs are "inimical to public education" and "promote discrimination, intolerance, and bigotry."[4] Although the poison pill has ramifications for many religious schools, its timing and structure show that its purpose was to preemptively exclude Plaintiff from the tuitioning program in order to moot *Carson*. In *Carson*, Commissioner Makin identified particular requirements that would prompt BCS to decline to participate in the tuitioning program.[5] The Legislature then imposed those requirements after the Commissioner's attempt to craft a poison pill from existing law failed in the First Circuit. *See* Brief for Respondent at 54, *Carson v. Makin*, 142 S. Ct. 1987 (2022) (No. 20-1088); *Carson*, 979 F.3d at 28, 31; P.L. 2021, Ch. 366, § 19; 5 M.R.S.A. § 4602(5)(C).

This result is intentional and specifically targets Plaintiff's religious beliefs, as Attorney General Frey explained in his press release[6] the day the Supreme Court decided *Carson*:

> The education provided by the schools at issue here is inimical to a public education. They promote a single religion to the exclusion of all others, refuse to admit gay and transgender children, and openly discriminate in hiring teachers and staff. One school teaches children that the husband is to be the leader of the household. While parents have the right to send their children to such schools, it is disturbing that the Supreme Court found that parents also have the right to force the public to pay for an education that is fundamentally at odds with values we hold dear. I intend to explore with Governor Mills' administration and members of the Legislature statutory amendments to address the Court's decision and ensure that public money is not used to promote discrimination, intolerance, and bigotry.

> While the Court's decision paves the way for religious schools to apply to receive public funds, it is not clear whether any religious schools will do so. Educational facilities that accept public funds must comply with anti-discrimination provisions of the Maine Human Rights Act, and this would

---

[4] Frey Press Release, *supra* n.3.
[5] *See* Defendant's Mot. for Summ. J. at 7–8, 13–14, *Carson v. Makin*, 401 F. Supp. 3d 207 (D. Me. June 26, 2019) (No. 1:18-cv-327); Brief of Appellee at 22–23, *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020) (No. 19-1746).
[6] Frey Press Release, *supra* n.3.

require some religious schools to eliminate their current discriminatory practices.

The school General Frey singles out is BCS.[7] On top of that, then-Speaker of the Maine House of Representatives boasted days after the Supreme Court decided *Carson* that the Maine Legislature intentionally designed the poison pill to evade the Court's decision[8]:



General Frey's press release, which disparages Plaintiff's religious beliefs and vows to exclude them using the MHRA, is a particularly egregious constitutional violation. And it leaves no doubt that the Legislature specifically crafted the poison pill to target Plaintiff's religious beliefs. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) ("[S]tatements made in connection with the challenged rules can be viewed as targeting the ultra-Orthodox [Jewish] community.") (quotation omitted); *Lukumi*, 508 U.S. at 540–42 (considering city council members' hostile statements towards religious group in finding ordinance not neutral); *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1729 (2018) (noting

---

[7] *See* Joint Stipulated Facts, *Carson*, 401 F. Supp. 3d 207 (D. Me. 2019) (No. 1:18-cv-327-DBH), ECF No. 25 ¶ 79 ("BCS believes that God has ordained distinct and separate spiritual functions for men and women, and the husband is to be leader of the home and men are to be the leaders of the church."); *id.* ¶ 102 ("BCS teaches children that the husband is the leader of the household.").
[8] https://twitter.com/SpeakerFecteau/status/1541041572636237826?s=20&t=YuvVEeWthiIx7ZxRNhS5C.

that civil rights commissioner's disparagement of plaintiff's religious beliefs as bigoted "is inappropriate"); *Kennedy*, 142 S. Ct. 2422 n. 1.

Excluding Plaintiff from the tuitioning program is a feature, not a bug. *See Lukumi*, 508 U.S. at 540–41. A law enacted "because of, not merely in spite of," its exclusion of religious schools simply cannot be neutral. *Lukumi*, 508 U.S. at 540; *see id.* at 533; *Fulton*, 141 S. Ct. at 1877 ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."). And although the poison pill failed to stop the Supreme Court from deciding *Carson*, it now excludes religious schools that teach from a particular religious perspective and whose admissions requirements reflect their religious mission from participating in the tuitioning program. As a result, the poison pill continues to accomplish the religious discrimination at the heart of the sectarian exclusion.[9] As the Supreme Court explained in *Carson*, the Education Commissioner's practice of enforcing the sectarian exclusion by "scrutinizing whether and how a religious school pursues its educational mission" is particularly troubling because of the potential for "state entanglement with religion and denominational favoritism." 142 S. Ct. at 2001. The poison pill suffers from the same problem. Therefore, strict scrutiny applies.

## 2.   Section 4602 is not generally applicable because it exempts single-sex schools.

Moreover, 5 M.R.S.A. § 4602 is not generally applicable, because it categorically exempts single-sex schools from nearly all educational nondiscrimination provisions, including those relating to religion, sexual orientation, and gender identity. 5 M.R.S.A. § 4602 applies to "educational institutions," defined as "any public school or educational program, any public post-secondary institution, any private school or educational program approved for tuition

---

[9] *See Carson* Stip. R. Ex. 3 at 3–4.

purposes if both male and female students are admitted." 5 M.R.S.A. § 4553(2-A). As a result, by definition, single-sex schools are not subject to § 4602[10] even if they participate in the tuitioning program, and, thus, they may discriminate on the basis of race, color, ancestry, national origin, sex, religion, sexual orientation, and gender identity. Accordingly, § 4602 is not generally applicable. *See Lukumi*, 508 U.S. at 543–44; *Fulton*, 141 S. Ct. at 1877 ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."); *see Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 66. Therefore, defendants must satisfy strict scrutiny, even if the poison pill was neutral.

### 3. The poison pill cannot satisfy strict scrutiny.

Strict scrutiny under the Free Exercise Clause requires a "precise analysis." *Fulton*, 141 S. Ct. at 1881. "Rather than rely on 'broadly formulated interests,' courts must 'scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants.'" *Id.* (quoting *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 431 (2006)). This means that to survive strict scrutiny analysis, Defendants cannot merely assert a general interest in nondiscrimination; they must demonstrate that they have a *compelling* interest in denying Plaintiff an exemption. *Fulton*, 141 S. Ct. at 1881. Obviously, attempting to avoid an adverse Supreme Court decision is not a compelling interest.

But beyond this, the law serves no compelling interest here. "[A] law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (quotation omitted). Section 4602 exempts comparable secular conduct—single-sex schools' discriminatory practices. But in

---

[10] Except as to disability. Me. Stat. tit. 5 § 4553(2-A) ("For purposes related to disability-related discrimination, "educational institution" also means any private school or educational program approved for tuition purposes.").

the same way that limiting admissions to a single sex is inherent in the pedagogical model of a single-sex school, educating students "in [its] faith, inculcat[e] its teachings, and train[] them to live [out] their faith are responsibilities that lie at the very core of the mission of a private religious school." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020); *Carson*, 142 S. Ct. at 2001. A religious school cannot fulfill this core mission if it cannot operate the school in accordance with its religious beliefs. And the state has no compelling interest in penalizing religious schools' pedagogical model for the sake of "nondiscrimination" while the law allows single-sex schools wide latitude to discriminate against protected classes with no relation to a single-sex school's pedagogical model. Rather, "'[t]he First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths.'" *Masterpiece*, 138 S. Ct. at 1727 (quoting *Obergefell v. Hodges*, 576 U.S. 644, 680 (2015) (citation omitted)).

Nor can perceived fears about violating the Establishment Clause create a compelling interest. Where there is "no valid Establishment Clause interest," the Establishment Clause cannot justify such discrimination. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 113–14 (2001). Withholding tuition funding from schools whose religious beliefs are considered "inimical to public education"[11] simply strives to maintain stricter separation than the Establishment Clause requires. But the Supreme Court has repeatedly explained that "an interest in separating church and state more fiercely than the Federal Constitution . . . cannot qualify as compelling in the face of the infringement of free exercise." *Carson*, 142 S. Ct. at 1998 (internal quotation marks omitted); *see Widmar v. Vincent*, 454 U.S. 263, 276 (1981). Indeed, the Education Commissioner made, and the Supreme Court rejected, that argument again in *Carson*.

---

[11] Frey Press Release, *supra* n.3.

Relatedly, avoiding state endorsement of a particular school's teaching or policies also fails to demonstrate a compelling interest under *Carson*, because tuition funds only flow to tuitioning schools because of the independent choices of tuition beneficiaries—the parents. *Carson*, 142 S. Ct. at 1997.

Finally, Defendants cannot demonstrate that the poison pill is narrowly tailored. A law is not narrowly tailored where "[t]he proffered objectives are not pursued with respect to analogous non-religious conduct, and those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Lukumi*, 508 U.S. at 546. Section 4602's exemption allowing single-sex schools to discriminate on the basis of any protected class other than disability demonstrates that the law is "underinclusive in substantial respects," *see id.*, and that the state could still achieve its interests by providing a religious exemption as well. The religious exemption that the poison pill repealed also demonstrates a more narrowly tailored option— exempting religious schools from the provisions that burden their religious beliefs while leaving the other provisions (that is, those relating to race, color, sex, ancestry, national origin, and disability) in place. Accordingly, the poison pill is not narrowly tailored to achieve a compelling government interest and cannot survive strict scrutiny.

### B. Applying MHRA to prohibit Plaintiff from employing only co-religionists violates the Establishment and Free Exercise Clauses.

Plaintiff is likely to succeed on its claim that applying MHRA's employment discrimination provision, 5 M.R.S.A.§ 4572(1)(A), to prohibit Plaintiff from hiring only co-religionists violates the Establishment and Free Exercise Clauses. Before the Maine Legislature adopted the poison pill, Commissioner Makin attempted to craft another poison pill from existing provisions of MHRA, contending that if BCS became approved for tuition purposes, it would be subject to § 4572(1)(A), which prohibits employers from failing or refusing to hire or otherwise

discriminating against any applicant "because of race or color, sex, sexual orientation or gender identity, physical or mental disability, religion, age, ancestry, national origin or familial status."[12] Although the First Circuit rejected this argument as to the *Carson* plaintiffs' standing, *Carson*, 979 F.3d at 28, 31, Plaintiff faces a credible threat of Defendants enforcing § 4572(1)(A) to prohibit BCS's practice of hiring only co-religionists if BCS participates in the tuitioning program.[13] Such enforcement violates both MHRA's plain text and the First Amendment.

### 1. The plain text of the MHRA protects Plaintiff's employment autonomy even when Plaintiff accepts public funds.

The MHRA's plain language protects Plaintiff's right to hire only co-religionists, even if it participates in the tuitioning program. 5 M.R.S.A. § 4572(1)(A) prohibits "employers" from engaging in "unlawful employment discrimination." However, 5 M.R.S.A. § 4553(4) explains that the term "'Employer' does not include a religious or fraternal organization or association . . . with respect to employment of its members of the same religion." Similarly, "a religious organization requiring that all applicants and employees conform to the religious tents of the organization" is statutorily defined as "not unlawful employment discrimination." 5 M.R.S.A. § 4573-A(2). Therefore, Plaintiff is not an "employer" engaging in "unlawful employment discrimination" when it requires its employees to affirm the Statement of Faith.

In *Carson*, Commissioner Makin argued that the exemption for religious employers in section 4553(4) is conditional on refusal to accept public funds under section § 4553(10)(G).[14] This interpretation is strained at best, and, in any event, section 4573-A(2)'s clarification that

---

[12] *See* Defendant's Mot. for Summ. J. at 7–8, 13–14, *Carson v. Makin*, 401 F. Supp. 3d 207 (D. Me. June 26, 2019) (No. 1:18-cv-327); Brief of Appellee at 22–23, *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020) (No. 19-1746).
[13] *See Statement from Attorney General Frey on* Carson v. Makin *oral argument*, Office of the Maine Attorney General, Dec. 8, 2021, https://www.maine.gov/ag/news/article.shtml?id=6220781; Frey Press Release, *supra* note 3.
[14] *See* Defendant's Mot. for Summ. J. at 7–8, 13–14, *Carson v. Makin*, 401 F. Supp. 3d 207 (D. Me. June 26, 2019) (No. 1:18-cv-327); Brief of Appellee at 22–23, *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020) (No. 19-1746).

religious organizations may lawfully give hiring preferences to co-religionists is not conditional

on refusing to accept public funds. As a result, enforcing section 4572(1)(A) against Plaintiff for

hiring only co-religionists violates the MHRA.

2.  **If Defendants enforce MHRA to impose liability on Plaintiff for hiring only co-religionists, it violates the Establishment and Free Exercise Clauses.**

Enforcing section 4572(1)(A) against Plaintiff for hiring only co-religionists also violates

the First Amendment's religion clauses. The Free Exercise and Establishment Clauses work in

tandem to "foreclose certain employment discrimination claims brought against religious

organizations." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2061. Religious organizations have

"autonomy with respect to internal management decisions that are essential to the institution's

central mission. And a component of this autonomy is the selection of the individuals who play

certain key roles." *Id.* at 2060. This ministerial exception, grounded in the First Amendment,

forbids a government from "[r]equiring a church to accept or retain an unwanted minister, or

punishing a church for failing to do so." *Hosanna-Tabor Evangelical Church & Sch. v. E.E.O.C.*,

565 U.S. 171, 188 (2012). The Supreme Court has made clear that teachers or other employees

who "play[] a vital part in carrying out the mission of the church" are covered by the ministerial

exception. *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2066.

Plaintiff's hiring practices for its ministries, including BCS, are protected by the ministerial

exception. BCS employees are responsible for teaching and modeling the Statement of Faith and

accomplishing the school's educational objectives. *See* Ex. A at 6. They serve as Christian role

models to the students, both in and out of school, and are required to both agree with the

statement of faith and engage in particular religious practices. *See* BCS Teacher Contract at 1–2

(attached as Exhibit B); BCS Staff Contract at 1–2 (attached as Exhibit C). BCS teachers and

staff educate students in Plaintiff's faith, inculcate its teaching, participate with students in

religious activities, and train students to live out their faith: "responsibilities that lie at the very core of the mission of a private religious school." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2064. Employing BCS teachers and staff who agree with and practice its Statement of Faith is necessary to accomplishing BCS's religious purpose, and the ministerial exemption protects this fundamental religious exercise. *See id.*; *Hosanna-Tabor*, 565 U.S. at 188–89.

Threatening to enforce 5 M.R.S.A. § 4572(1)(A) against Plaintiff if it participates in the tuitioning program unconstitutionally conditions participation on Plaintiff relinquishing its First Amendment right to select its ministers. Plaintiff has a "right to participate in government benefit program[s] without having to disavow its religious character," *Trinity Lutheran*, 137 S. Ct. at 2022, and maintaining autonomy in the selection of its ministers is necessary to retaining its religious character, *see Hosanna-Tabor*, 132 S. Ct. at 188 ("[D]epriving the church of control over the selection of those who will personify its beliefs" infringes its right under the Free Exercise Clause to "shape its own faith and mission."). Forcing Plaintiff to choose between participating in a generally available benefit or preserving its religious mission "would allow the government to 'produce a result which [it] could not command directly.' Such interference with constitutional rights is impermissible," *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (*quoting Speiser v. Randall*, 357 U.S. 513, 526 (1958) (citation omitted)), and "effectively penalizes the free exercise of [its] constitutional liberties," *Trinity Lutheran*, 137 S. Ct. at 2022 (*quoting McDaniel*, 435 U.S. at 626. This is especially true where enforcing the MHRA in this manner is contrary to MHRA's text, which protects religious organizations' right to hire only co-religionists whether they accept public funding or not. As a result, Plaintiff is likely to succeed in its claim to enjoin Defendants from enforcing 5 M.R.S.A. § 4752(1)(A) to prohibit it from hiring only co-religionists.

**C.     The poison pill violates the U.S. Constitution's Free Speech Clause.**

Finally, Plaintiff is also likely to succeed on its claim that the poison pill violates the First Amendment's Free Speech Clause. Content-based laws, or laws that regulate speech "because of the topic discussed or the idea or message expressed," are presumptively unconstitutional unless they satisfy strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Even facially content-neutral laws "will be considered content-based regulations of speech" if they "cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Viewpoint discrimination, "an egregious form of content discrimination," occurs "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

The poison pill restricts Plaintiff's speech based on content and viewpoint, because it is designed to force Plaintiff to stop educating its students from its religious perspective as a condition of participating in the tuition program. *See Rosenberger*, 515 U.S at 831. Educating students from a religious perspective is a form of speech and expression protected under the Free Speech Clause. "Religion may be a vast area of inquiry, but it also provides . . . a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered." *Id.*; *see Kennedy*, 142 S. Ct. at 2421 ("Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities. That the First Amendment doubly protects religious speech is no accident. It is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent." (citations omitted)). If Plaintiff teaches from its religious

Case 1:23-cv-00146-JAW   Document 5   Filed 03/27/23   Page 19 of 22   PageID #: 63

perspective, it must either forgo accepting publicly funded tuition payments or face thousands of dollars in liability. *See* 5 M.R.S.A. §§ 4613(2)(B)(7); 4614. And suppressing Plaintiff's religious perspective is the poison pill's avowed purpose. *See Rideout v. Gardner*, 838 F.3d 65, 71 (1st Cir. 2016) ("The government's purpose is the controlling consideration" in determining whether a law is content based). But Maine cannot "suppress unpopular ideas or information or manipulate the public debate through coercion," *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994), and it "offends the First Amendment [to] impose[] financial burdens on certain speakers based on the content of their expression," *Rosenberger*, 515 U.S. at 828–29. Imposing financial burdens because Plaintiff's teaching reflects its religious perspective is unconstitutional under the Free Speech Clause.

## II.   Plaintiff will suffer irreparable harm in the absence of an injunction.

Absent an injunction, Plaintiff will suffer a continuing deprivation of its First Amendment rights. To participate in the tuitioning program for the upcoming school year, Plaintiff must apply for BCS to become approved for tuition purposes by September 1st.[15] Plaintiff cannot recover each year's lost opportunity to participate. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Matter of Providence Journal Co.*, 820 F.2d 1342, 1352 (1st Cir. 1986). As a result, Plaintiff's "showing with respect to the likelihood of this continuing deprivation of their First Amendment rights also shows that [it is] likely to suffer an irreparable harm." *We the People PAC v. Bellows*, 40 F.4th 1, 26 (1st Cir. 2022).

---

[15] Maine Department of Education, *Private School Approval*, https://www.maine.gov/doe/schools/schoolops/privateschoolapproval#:~:text=Any%20request%20for%20approval%20for,M%20240)%20by%20September%201.

**III.   The balance of equities and public interest favor an injunction.**

The balance of equities and public interest also strongly favor an injunction. "[T]he public has a strong[] interest in ensuring the constitutionality of state laws[] and protecting constitutional rights." *Me. Forest Prods. Council v. Cormier*, 586 F. Supp. 3d 22, 64 (D. Me. 2022). The public interest is not served by allowing the poison pill to continue to achieve its unconstitutional objective. *Condon v. Andino, Inc.*, 961 F. Supp. 323, 331 (D. Me. 1997) ("It is hard to conceive of a situation where the public interest would be served by enforcement of an unconstitutional law or regulation."). In the "balance of relative hardships," the harm of suffering ongoing punishment for its religious beliefs far outweighs the minimal burden, if any, to Defendants of allowing Plaintiff to participate in the tuitioning program. *See We the People PAC*, 40 F.4th at 25. Once a school becomes approved for tuition purposes, tuition payments flow from the local SAUs to pay the tuition of qualifying students. All Plaintiff asks of Defendants is that they refrain from taking unconstitutional enforcement action against it when that occurs. At the end of the day, Plaintiff will continue to operate BCS according to its religious beliefs whether it may participate in the tuitioning program or not; unconstitutionally excluding BCS from the tuitioning program as a result does not benefit the Defendants or the public. Therefore, the balance of equities and public interest favor injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff a preliminary injunction enjoining Defendants from enforcing the religion, sexual orientation, and gender identity provisions of 5 M.R.S.A. § 4602 against Plaintiff and from enforcing 5 M.R.S.A. § 4572(1)(A) to prohibit Plaintiff from hiring co-religionists.

Dated: March 27, 2023

Respectfully submitted,

*s/Patrick Strawbridge*
Patrick Strawbridge (Bar No. 10024)
  *Lead Counsel*
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Jeffrey C. Mateer*
David J. Hacker*
Lea E. Patterson*
Keisha T. Russell*
Courtney A. Jones*
First Liberty Institute
2001 W Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
lepatterson@firstliberty.org

Tiffany H. Bates*
Consovoy McCarthy PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243-9423
tiffany@consovoymccarthy.com

*Certificates for admission *pro hac vice* pending

Attorneys for Plaintiff Crosspoint Church

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, I electronically filed a true and correct copy of Plaintiff's Motion for Preliminary Injunction through the Court's CM/ECF system and will serve a copy on each of the Defendants according to the Federal Rules of Civil Procedure.

Respectfully submitted,

*s/ Patrick Strawbridge*
Patrick Strawbridge (Bar No. 10024)