IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CROSSPOINT CHURCH,<br><br>Plaintiff,<br><br>v.<br><br>A. PENDER MAKIN, in her official capacity as Commissioner of the Maine Department of Education, and JEFFERSON ASHBY, EDWARD DAVID, JULIE ANN O'BRIEN, MARK WALKER, and THOMAS DOUGLAS, in their official capacities as Commissioners of the Maine Human Rights Commission.<br><br>Defendants. | Civil Action No. 23-cv-00146-JAW |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Maine's years-long effort to avoid adjudicating the tuition program's unconstitutional Sectarian Exclusion precipitates this case. The state maintained throughout *Carson v. Makin* that courts could not review BCS students' challenge to the Sectarian Exclusion because certain Maine Human Rights Act ("MHRA") provisions violated BCS's religious beliefs and would prevent it from participating in the tuitioning program.[1] When the Supreme Court disagreed and invalidated the Sectarian Exclusion, the state unsuccessfully sought to avoid an injunction by highlighting the poison pill's deterrent effect.[2] Now that BCS challenges those provisions, the state contends they are no obstacle at all. After asserting for five years that BCS will "be forced to sit like Damocles" and "operate under a dangling sword" if it participates in the tuitioning program, the state cannot avoid adjudication of its unconstitutional actions by pretending the threat does not exist. *See N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53 (1st Cir. 2021). The case is ripe for adjudication, and Plaintiff is entitled to a preliminary injunction.

Defendants' Response at least concedes (at 18) that the ministerial exception restricts the application of 5 M.R.S.A. § 4572(1)(A) to BCS's employment practices with respect to a significant portion of its employees. At a minimum, then, a preliminary injunction to that effect is appropriate. But the Defendants' ongoing First Amendment violations justify the full injunction Plaintiff seeks.

## ARGUMENT

### I. BCS need not risk incurring crushing legal penalties to seek relief.

BCS need not risk the MHRA's substantial legal penalties to seek relief.[3] "To determine

---

[1] Def.'s Mot. for Summ. J. at 7–8, 13–14, *Carson v. Makin*, 401 F.Supp. 3d 207 (D. Me. June 26, 2019) (No. 1:18-cv-327); Brief of Appellee at 22–23, *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020) (No. 19-1746); Brief for Respondent at 54, *Carson v. Makin*, 142 S. Ct. 1987 (2022) (No. 20-1088).
[2] *See* Def.'s Mot. to Dismiss at 12–13, *Carson v. Makin*, 2023 WL 2814131 (D. Me. Apr. 6, 2023) (No. 1:18-cv-327); *Carson v. Makin*, 2023 WL 2814131 at *18–19 (D. Me. Apr. 6, 2023). "Poison pill" is defined at Compl. ¶ 74.
[3] The presence of a private right of action does not alter the relief Plaintiff seeks against Defendants, who are uniquely positioned to enforce the challenged provisions. The MHRC possesses broad authority to investigate

whether a case is ripe for review, a federal court must evaluate the fitness of the issue presented and the hardship that withholding immediate judicial consideration will work." *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999). In the "pre-enforcement context," when a party has "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity[,]" the case is "fit for judicial review." *Id.* When "the challenged statute, fairly read, thwarts … the plan[,] … the element of hardship" also exists. *Id.* If the general precepts of fitness and hardship apply, a court should "have little difficulty in concluding that [the case] was ripe when filed." *Id.*

Both requirements are met here. BCS is eligible for the tuitioning program and would participate if the challenged MHRA provisions did not impose liability because of BCS's religious exercise. Compl. ¶¶ 46, 49–51, 95–96, 100. Defendants do not question BCS's eligibility or intent to participate in the program. *See* Def.'s Resp. Br. 8–9, ECF No. 14. Defendants also agree that BCS "would be required to comply" with the challenged MHRA provisions if BCS participates in the tuitioning program. *Id.* at 9. For this reason, BCS has refrained from participating in the tuitioning program. Compl. ¶ 100. *See Whitehouse*, 199 F.3d at 34 (when a party is forced to "refrain[] from carrying forward its plan because it reasonably fear[s] [enforcement] … delaying or denying resolution of the issue would [work] a substantial hardship."). As a result, the poison pill forces BCS to either relinquish its religious identity or forego participation in the tuitioning program for which it is otherwise eligible. "Either injury is justiciable." *See N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996).

"[T]he reasonableness of the fear of enforcement," which "is at the core of both standing

---

complaints and take enforcement action, and the law incentivizes private plaintiffs to present their claims to the MHRC first. 5 M.R.S.A. §§ 4612, 4622. The Education Commissioner is entitled to participate in those proceedings and shares rulemaking authority with the MHRC. 5 M.R.S.A. § 4603–04. Preventing Defendants from enforcing the challenged provisions would thus provide significant relief to BCS.

and ripeness," *Whitehouse*, 199 F.3d at 33, is a "quite forgiving" standard, satisfied even if the statute at issue has never been enforced and the defendants represent that it will not be enforced, so long as the statute is not "moribund" and at least arguably prohibits the plaintiff's intended behavior. *N.H. Right to Life*, 99 F.3d at 14–15; *Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995). The poison pill is recently adopted and "'aimed directly' at entities like the plaintiff[]": religious schools eligible to tuition.[4] *See N.H. Right to Life*, 99 F.3d at 15 (quoting *Virginia v. Am. Booksellers Ass'n Inc.*, 484 U.S. 383, 392 (1988)); Compl. ¶¶ 75–77. The Defendants agree (at 9) that the challenged MHRA provisions would apply to BCS if it became a tuitioning school, and they do not even disclaim any intent to enforce the provisions. Plaintiff reasonably fears enforcement on these grounds alone.[5] *See Whitehouse*, 199 F.3d at 36. BCS thus faces the "direct and immediate dilemma of choosing between the Scylla of intentionally flouting state law and the Charybdis of forgoing what [it] believe[d] to be constitutionally protected activity." *Id.* at 34 (internal citations omitted). Defendants effectively claim that the poison pill's success in deterring Plaintiff from participating in the tuition program insulates it from legal challenge. But "[i]t would be little short of perverse to deny a party standing because the statute she challenges is so potent that no one dares violate it, especially when the result is widespread self-censorship." *Id.* at 33.

## II. Section 4602 burdens Plaintiffs' religious exercise.

Defendants' argument that § 4602 does not burden BCS's religious exercise (at 10–11) relies on two erroneous assumptions: 1) that § 4602 applies only to admissions and 2) that BCS's

---

[4] Notably, because § 4602 applies only to public schools and tuitioning private schools (not to all schools), *see* 5 M.R.S.A. § 4553(2-A), the 2021 amendment to § 4602's religious exemption served no purpose unless the Sectarian Exclusion fell and religious schools became eligible to tuition.

[5] The statements of the then-Speaker of the House, the Attorney General, and the Education Commissioner in *Carson* provide remarkable clarity as to the poison pill's intended purpose and effect, but they are not essential to meet the "low threshold" of reasonable fear of enforcement. *See, e.g.*, *N.H. Right to Life*, 99 F.3d at 14–15.

religious exercise is limited to simply expressing its religious beliefs. In fact, BCS's religious exercise encompasses all aspects of operating BCS according to its religious beliefs. Compl. ¶¶ 23, 25–41. BCS's requiring students to behave consistently with BCS's statement of faith is an exercise of BCS's religious beliefs and is necessary to its religious educational mission. Compl. ¶¶ 27–33, 35. Accordingly, applicants for admission at BCS must agree to cooperate with BCS's statement of faith and code of conduct, and a student who persistently advocates beliefs contrary to BCS's statement of faith is subject to expulsion for failure to cooperate with BCS's religious purpose and code of conduct. Compl. ¶ 32–33, 35–38. Section 4602 burdens BCS's religious exercise not just in its admissions, as Defendants claim, but also in BCS's daily internal operations, *see* 5 M.R.S.A. § 4602(1)(A); *Doe v. Regional Sch. Unit 26*, 86 A.3d 600, 607 (Me. 2014); *Fitzpatrick v. Town of Falmouth*, 879 A.2d 21, 27 (Me. 2005). Defendants concede (at 10 n.12) that § 4602(5)(D) would require BCS to permit student religious expression contrary to its statement of faith.[6] Section 4602 would also require BCS to affirm a student's gender identity and sexual orientation, contrary to its statement of faith. *RSU 26*, 86 A.3d at 607; Compl. ¶¶ 28–29.[7] Moreover, while BCS considers applicants who are not Christian, BCS does ask about and consider applicants' religious beliefs in the admissions process and evaluates the student's spiritual fit with the school's statement of faith. Compl. ¶¶ 29–35; Pl.'s Mot. for Prelim. Inj. Ex. A at 7–8. Preferential admissions policies violate § 4602. *See id.* § 4602(1)(D); 05-071 Me. Code

---

[6] Defendants are mistaken (at 10) that BCS is already subject to the religious nondiscrimination requirements in § 4602. Section 4602 applies only to public schools and private schools participating in the tuitioning program, not to all schools. 5 M.R.S.A. § 4553(2-A).

[7] BCS's 30(b)(6) representatives testified in their *Carson* depositions that it violates BCS's statement of faith to admit a student or allow a student to remain enrolled who violates BCS's statement of faith by presenting as a gender not consistent with his or her biological sex or by professing the "entrenched" belief that a homosexual sexual orientation is "who [the student is] and [the student] think[s] that is right and good." Def.'s Resp. Br. Ex. 4 at 29–30; Boone Dep. at 23–25 (attached as Exhibit D (consecutively lettered)); *see* Pl.'s Mot. for Prelim. Inj. Ex. A at 21.

4

R. § 4.05; 94-348 Me. Code R. § 4.05.[8]

To say that § 4602 does not burden BCS's religious practice because BCS may still express—but not enforce—its religious beliefs is absurd. More broadly, the poison pill continues the Sectarian Exclusion's unconstitutional goal of excluding schools with disfavored religious beliefs from participating in the tuitioning program. *See Carson v. Makin*, 142 S. Ct. 1987, 1994–95, 1997, 2002 (2022). Denying BCS the ability to participate in the program because of its religious beliefs is a burden. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017).

### III. Applying the Poison Pill to BCS violates the Free Exercise Clause.
#### A. Section 3602 is not neutral and generally applicable.

Defendants spend much of their response (at 14) arguing that the broad exemption for single-sex schools was an accident.[9] But no matter how the exemption came to be, it's there. The Court cannot simply ignore the exemption just because the legislature might repeal it. The proposed legislation is "not yet the law" (and may not ever be), and this Court should "not render an advisory opinion on how it may affect [its] Judgment at some future time." *Associated Gen. Contractors of Am. v. City of Columbus*, 172 F.3d 411, 421 (6th Cir. 1999); *United States v. Sims*, No. 19CR857NSR01, 2022 WL 3013111, at *4 (S.D.N.Y. July 29, 2022) ("[C]onsidering the applicability of legislation not yet enacted" raises significant "justiciability concerns."). This Court must take the law as it finds it now.

Whether any single-sex schools presently use the exemption is beside the point. The exemption's presence alone renders the law not generally applicable. *Fulton v. City of Phila.*,

---

[8] The regulatory provisions do not appear to have been updated to reflect protected classes other than sex, but as a result of the amendments to § 4602, the prohibitions on preferential admissions practices would apply with equal force to all the protected classes listed in § 4602. *See* 5 M.R.S.A. § 4602(1)(D).

[9] But as Defendants concede (at 5 n.4), the legislature amended the exemption to subject single-sex schools to disability nondiscrimination requirements. So these provisions have not escaped the legislature's notice.

5

141 S. Ct. 1868, 1878 (2021) (finding a rule not generally applicable because it contained an exemption, even though it had never been used). Furthermore, even if utilization of the exemption *were* relevant, Maine allows out-of-state schools to receive tuition funds at the election of parents, *see Carson*, 142 S. Ct. at 1994, and a new single-sex school could open in Maine at any time.

Finally, Defendants' proposition that the Court strike the single-sex exemption instead of proceeding to strict scrutiny is inappropriate. Severability allows a Court to invalidate an unconstitutional provision of a statute while leaving the remainder in place. But the single-sex exemption is not unconstitutional, and it does not make the overall statute unconstitutional. Rather, the exception makes the statute not generally applicable, and, as a result, the Free Exercise Clause grants an equivalent religious exemption where appropriate unless the state meets strict scrutiny. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022). The Free Exercise Clause entails a fact-specific analysis tailored to the particular plaintiff, but that individualized analysis looks only toward the provision of an exemption; it does not contemplate rewriting statutes to make them generally applicable, nor should it because not-generally-applicable statutes are not inherently unconstitutional. *See, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66–68 (2020) (exempting houses of worship from COVID-19 restrictions because exemptions were available to comparable, secular establishments); *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Whether and how to make the statute generally applicable is a choice for the legislature, and "[a] severability clause is not grounds for a court to devise a judicial remedy that entails quintessentially legislative work." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 136 S. Ct. 2292, 2319 (2016) (cleaned up). Because the single-sex school exemption exists, Defendants' arguments that require its absence are irrelevant. Whether

the poison pill targets BCS or not, the lack of general applicability requires strict scrutiny.

The poison pill lacks neutrality as well. Because § 4602 only applies to public schools and tuitioning schools (not to all schools), *see* 5 MRSA § 4553(2-A), the poison pill served no purpose unless the legislature expected the Sectarian Exclusion to fall and religious schools to become eligible to tuition. And although Defendants attempt to minimize the statements of Attorney General Frey and the then-Speaker of the Maine House of Representatives, their statements provide remarkable clarity as to the poison pill's purpose.

### B. The poison pill does not satisfy strict scrutiny.

The presence of the sweeping exemption for single-sex schools undermines any interest the state may have in denying an exemption to BCS, especially when the Defendants concede (at 5, 15) that the single-sex school exemption "makes no sense" and has "no logical reason," undermining Maine's interest in nondiscrimination. In addition, Defendants assert (at 16–17) only a general interest in nondiscrimination rather than engaging in the Free Exercise Clause's "precise analysis" in which "courts must scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *Fulton*, 141 S. Ct. at 1881. This analysis still applies where the government asserts nondiscrimination as its interest. *Id.* The Supreme Court has repeatedly rejected arguments like Defendants' that a broad interest translates to a compelling interest in denying exemptions. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006); *Fulton*, 141 S. Ct. at 1881–82; *Holt v. Hobbs*, 574 U.S. 352, 368 (2015). And Defendants' purported interest (at 17) in minimizing taxpayer conflict appears to be simply an implied heckler's veto, which does not justify a Free Exercise violation. *See Kennedy*, 142 S. Ct. at 2428.

### CONCLUSION

For these reasons, the Court should grant Plaintiff a preliminary injunction.

7

Dated: May 12, 2023

Jeffrey C. Mateer*
David J. Hacker*
Lea E. Patterson*
Keisha T. Russell*
Courtney A. Jones*
First Liberty Institute
2001 W Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
lepatterson@firstliberty.org

Respectfully submitted,

/s/ Patrick Strawbridge
Patrick Strawbridge (Bar No. 10024)
  *Lead Counsel*
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Tiffany H. Bates*
Consovoy McCarthy PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243-9423
tiffany@consovoymccarthy.com

*Admitted *pro hac vice*

Attorneys for Plaintiff Crosspoint Church

8

**CERTIFICATE OF COMPLIANCE**

      I hereby certify that this motion complies with the length and typeface requirements of Local Rule 7(d).

Dated: May 12, 2023

| | |
|---|---|
| Jeffrey C. Mateer* <br> David J. Hacker* <br> Lea E. Patterson* <br> Keisha T. Russell* <br> Courtney A. Jones* <br> First Liberty Institute <br> 2001 W Plano Parkway, Suite 1600 <br> Plano, Texas 75075 <br> (972) 941-4444 <br> lepatterson@firstliberty.org | Respectfully submitted, <br><br> /s/ Patrick Strawbridge <br> Patrick Strawbridge (Bar No. 10024) <br>   *Lead Counsel* <br> Consovoy McCarthy PLLC <br> Ten Post Office Square <br> 8th Floor South PMB #706 <br> Boston, MA 02109 <br> (703) 243-9423 <br> patrick@consovoymccarthy.com <br><br> Tiffany H. Bates* <br> Consovoy McCarthy PLLC <br> 1600 Wilson Blvd. <br> Suite 700 <br> Arlington, VA 22209 <br> (703) 243-9423 <br> tiffany@consovoymccarthy.com <br><br> *Admitted *pro hac vice* <br><br> Attorneys for Plaintiff Crosspoint Church |

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023 a true and correct copy of Plaintiff's Reply in Support of its Motion for Preliminary Injunction was filed and served on all counsel of record using the court's CM/ECF system.

Jeffrey C. Mateer*
David J. Hacker*
Lea E. Patterson*
Keisha T. Russell*
Courtney A. Jones*
First Liberty Institute
2001 W Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
lepatterson@firstliberty.org

Respectfully submitted,

/s/ Patrick Strawbridge
Patrick Strawbridge (Bar No. 10024)
  *Lead Counsel*
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Tiffany H. Bates*
Consovoy McCarthy PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243-9423
tiffany@consovoymccarthy.com

*Admitted *pro hac vice*

Attorneys for Plaintiff Crosspoint Church

10