## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CROSSPOINT CHURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00146-JAW |
| | ) |
| A. PENDER MAKIN, in her | ) |
| official capacity as Commissioner of | ) |
| the Maine Department of Education, et al., | ) |
| | ) |
| Defendants. | ) |

## JOINT STIPULATED FACTS

Solely for purposes of resolution of the parties' joint motion to convert the Order on Plaintiff's Motion for Preliminary Injunction into an Order on Permanent Injunction and enter final judgment, Plaintiff and Defendants stipulate to each of the following facts:[1]

### *Facts About Publicly Funded Education in Maine*

1. The Maine Legislature guarantees every school-aged child residing within the state "an opportunity to receive the benefits of a free public education." 20-A M.R.S.A. § 2(1).

2. The Legislature vests the authority to fulfill the guarantee of § 2(1) in local school administrative units (SAUs). 20-A M.R.S.A. § 2(2).

3. Pursuant to 20-A M.R.S.A. § 5204(4), an SAU "that neither maintains a secondary school nor contracts for secondary school privileges pursuant to chapter 115 shall pay the tuition, in accordance with chapter 219, at the public school or the approved private school of the parent's choice at which the student is accepted." Such SAUs are referred

---

[1] By stipulating to these facts, the parties do not concede that the facts are relevant or material, and the parties reserve the right to dispute the relevance and/or materiality of any stipulated fact. The parties also reserve the right to supplement the record.

to here as "tuitioning SAUs."

4. 20-A M.R.S.A. § 2901 lays out the requirements for a private school to operate as an approved private school for meeting the requirement of compulsory school attendance under 20-A M.R.S.A. § 5001-A(3)(A)(1)(a).

5. 20-A M.R.S.A. § 2951 contains the requirements for a private school to be approved to receive public funds for tuition purposes when resident secondary student's parents select an approved school.

6. 20-A M.R.S.A. § 2951(2) states, in pertinent part, that "[a] private school may be approved for the receipt of funds for tuition purposes only if it:…[i]s a nonsectarian school in accordance with the First Amendment of the United States Constitution." .

7. The Supreme Court declared the "nonsectarian" requirement unconstitutional in *Carson v. Makin*, 142 S. Ct. 1987 (2022).

8. The Defendant Commissioner of Education is responsible for enforcing the requirements of 20-A M.R.S.A. § 2951.

9. From the date that the Supreme Court issued its decision in *Carson*, the Department of Education (the "Department") has understood that it may not prevent private schools from receiving approval for the receipt of public funds for tuition purposes solely because they are sectarian.

10. On July 28, 2022, Cheverus High School, a sectarian high school in Portland, Maine, applied for approval for the receipt of public funds for tuition purposes.

11. The Department processed Cheverus' application in the same manner that it processed applications for any private school seeking approval for tuition purposes for the first time.

12. Cheverus' application was approved on September 16, 2022.

13. No other sectarian school has applied for approval for the receipt of public funds for tuition

purposes.

### *Amendments to the Maine Human Rights Act*

14. Defendants Sanders, David, O'Brien, Walker, and Douglas are Commissioners of the Maine Human Rights Commission ("MHRC"), an agency of the state of Maine, created and empowered under 5 M.R.S. § 4566 to "investigat[e] all forms of invidious discrimination, whether carried out legally or illegally, and whether by public agencies or private persons."

15. On May 6, 2021, the MHRC submitted LD 1688, "An Act to Improve Consistency Within the Maine Human Rights Act."

16. Exhibit 1 to the Stipulated Facts is a true and accurate copy of testimony of the MHRC's then-Executive Director in support of LD 1688.

17. On June 17, 2021, the Maine Legislature enacted LD 1688 -- "An Act to Improve Consistency in Terminology and within the Maine Human Rights Act," P.L. 2021, Ch. 366, § 19, and it was signed into law by the Governor on June 24, 2021.

18. That legislation amended 5 M.R.S.A. § 4602, the provision of the Maine Human Rights Act prohibiting educational discrimination, by adding ancestry, color, and religion as protected classes. The legislation struck the provision exempting all religious organizations from the prohibition against sexual orientation discrimination and replaced it with a provision stating: "Nothing in this section . . . [r]equires a religious corporation, association or society that does not receive public funding to comply with this section as it relates to sexual orientation or gender identity."

### *Facts About the Plaintiff*

19. Plaintiff Crosspoint Church is a Christian church incorporated as a nonprofit corporation under Maine law and is located at 1476 Broadway, Bangor, Maine 04401.

20. Plaintiff incorporated in 1967 under its original name Bangor Baptist Church "[f]or the

      purpose of maintaining a church for the worship of Almighty God, preaching the Gospel of Jesus Christ, and conducting the education of adults and children."

21. Crosspoint Church's objective is "full obedience to the will of the Lord Jesus Christ who is the Founder and Head of the Church."

22. Crosspoint Church is an independent church not subject to the governance or authority of any higher ecclesiastical body.

23. Crosspoint Church operates Bangor Christian School (BCS), a K4–12 school created in 1970 as an integrated auxiliary of the church.

24. Crosspoint Church's Senior Pastor and Deacon Board govern BCS.

25. Crosspoint Church operates BCS in accordance with its Statement of Faith, which summarizes its religious beliefs.

26. BCS's principal reports to Crosspoint Church's Senior Pastor.

27. BCS is accredited by the New England Association of Schools and Colleges.

28. BCS annually maintains basic school approval under 20-A M.R.S.A. § 2901(2)(A).

29. BCS meets the requirements for reporting and release of student records, *see* 20-A M.R.S.A. §§ 2951(5), (7), 2952 and is willing to comply with the remaining applicable requirements for tuitioning schools, *see id.* §§ 2951(5), 2953–2954.

30. BCS has not applied for approval for the receipt of public funds for tuition purposes, nor has BCS contacted Department personnel regarding the process for applying for approval.

31. But for the amendments to 5 M.R.S.A. § 4602, BCS would apply to become approved for tuition purposes.

32. During the 2022-23 school year, twenty-eight BCS high-school students lived in tuitioning SAUs: Bradford, Glenburn, Levant, Orrington, and Veazie, Maine.

33. BCS's total high-school enrollment for the 2022–23 school year is 92 students.

34. Crosspoint Church pays 95% of tuition for the children of Crosspoint Church employees, including BCS staff, to attend BCS.

35. For the 2023–24 school year, eight BCS high-school students are children of Crosspoint Church employees and live in Glenburn, Maine—a tuitioning SAU.

36. If the state approved BCS for tuition purposes, BCS would charge the tuition for these eight students to Glenburn, resulting in an annual savings of approximately $47,120.

37. If the state approved BCS for tuition purposes, the BCS high school students residing in tuitioning SAUs would be eligible to participate in the tuitioning program instead of paying BCS tuition out of pocket.

38. Students are required to attend BCS's weekly chapel service.

39. If a student persistently and unrepentantly engages in "counter-witnessing," that is, advocating beliefs contrary to BCS's statement of faith, that student would be deemed not in agreement and compliance with BCS's purpose, handbook, and code of conduct and, thus, be subject to removal from the school.

40. Students must adhere to BCS's code of conduct and dress code, which derive from Plaintiff's religious beliefs.

41. BCS's code of conduct prohibits students from, among other things, engaging in immoral conduct, including sexual activity outside of marriage as defined in the Statement of Faith, or identifying as a gender other than their biological sex.

42. BCS's dress code requires students to wear clothing consistent with their biological sex.

43. Crosspoint Church employees, including BCS staff, must be co-religionists—that is, they must be in agreement with Crosspoint's Statement of Faith and engage in religious practice consistent with Crosspoint Church's spiritual standards.

44. BCS teachers, as those primarily responsible for fulfilling BCS's religious mission, must

   agree to both BCS's Statement of Faith and the Educational Philosophy and Objectives and be committed to upholding them.

45. BCS teachers serve as Christian role models to the students; and, accordingly, must adhere to biblical standards of conduct, including those relating to sexual behavior; the use of alcohol, drugs, and tobacco; lewd public dancing; gambling; and any other activity that would hinder a teacher's religious testimony.

46. BCS teachers and staff uphold the Statement of Faith and Educational Philosophy and Objectives of the school.

47. BCS teachers and staff carry out Plaintiff's mission by educating students in their faith and fostering their spiritual development. Their duties are vital to accomplishing Plaintiff's purpose in preaching and educating students in the Gospel of Jesus Christ.

48. BCS teachers and staff educate students in Plaintiff's faith, inculcate its teaching, and train them to live their faith. They serve as Christian role models to the students, both in and out of school. They must not only agree that they share Plaintiff's Statement of Faith to be hired, but they must also feel that teaching at BCS is God's direction for them.

49. BCS does not require students to profess to be born-again Christians as a condition of admission.

50. BCS is willing to consider admitting students from any religious background or faith so long as they are willing to support BCS' philosophy of Christian education and conduct.

51. BCS teaches children that the husband is the leader of the household.

52. Only men are eligible to serve on the Deacon Board.

53. Exhibit 2 to the Stipulated Facts is a true and accurate copy of BCS' Application for Admission.

54. Exhibit 3 to the Stipulated Facts is a true and accurate copy of BCS' Student Handbook.

55. Exhibit 4 to the Stipulated Facts is a true and accurate copy of BCS' Faculty Contract.

56. Exhibit 5 to the Stipulated Facts is a true and accurate copy of BCS' Teacher Contract.

57. Exhibit 6 to the Stipulated Facts is a true and accurate copy of the Deposition of Jeffrey Benjamin, part of the stipulated record in *Carson v. Makin*, No. 1:18-cv-00327, Doc. 24-8.

58. Exhibit 7 to the Stipulated Facts is a true and accurate copy of the Deposition of Martha Boone, part of the stipulated record in *Carson v. Makin*, No. 1:18-cv-00327, Doc. 24-16.

### *Facts Regarding the Sectarian Exclusion*

59. In 2003, the Maine Legislature considered repealing its sectarian exclusion. *See* L.D. 182, "An Act to Eliminate Discrimination Against Parents Who Want to Send Their Children to Religious Private Schools."

60. Exhibit 8 to the Stipulated Facts is true and accurate copy of the legislative history of L.D. 182.

61. Exhibit 9 to the Stipulated Facts is true and accurate copy of interrogatory responses from Education Commissioner Robert Hasson, Jr.

62. Exhibit 10 to the Stipulated Facts is true and accurate copy of correspondence regarding the Cardigan Mountain School.

### *Facts Regarding Statements on Carson v. Makin and Amendments to Maine's Law*

63. Exhibit 11 to the Stipulated Facts is a true and accurate copy of the Statement of Maine Attorney General Aaron Frey on the Supreme Court Decision in *Carson v. Makin* (June 21, 2022).

64. Exhibit 12 to the Stipulated Facts is a true and accurate copy of the Statement of Attorney General Aaron Frey on the *Carson v. Makin* oral argument (Dec. 8, 2021).

65. Exhibit 13 to the Stipulated Facts is a true and accurate copy of the Tweet of Speaker of the House Ryan Fecteau on the Amendments to 5 M.R.S.A. § 4602 (June 26, 2022).

Date: March 28, 2024

/s/ *Christopher Taub*
Christopher C. Taub
Chief Deputy Attorney General
Sarah A. Forster
Assistant Attorney General
Office of the Attorney General
State House Station 6  Augusta, ME 04333
Telephone: (207) 626-8800
Email: Christopher.C.Taub@maine.gov
         sarah.forster@maine.gov

*Attorneys for Defendants*

Respectfully submitted,

/s/ *Patrick Strawbridge*
Patrick Strawbridge (Bar No. 10024)
   *Lead Counsel*
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Tiffany H. Bates*
Consovoy McCarthy PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243-9423
tiffany@consovoymccarthy.com

Jeffrey C. Mateer*
David J. Hacker*
Lea E. Patterson*
Keisha T. Russell*
Courtney A. Jones*
First Liberty Institute
2001 W Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
lepatterson@firstliberty.org

*Admitted *pro hac vice*

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I certify that, on March 28, 2024, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system.

|  |  |
|---|---|
| /s/Christopher C. Taub<br>Christopher C. Taub<br>Chief Deputy Attorney General<br>Office of the Attorney General<br>State House Station 6<br>Augusta, ME 04333<br>(207) 626-8800<br>Christopher.C.Taub@maine.gov | Respectfully submitted,<br><br>/s/ Patrick Strawbridge<br>Patrick Strawbridge (Bar No. 10024)<br>  *Lead Counsel*<br>Consovoy McCarthy PLLC<br>Ten Post Office Square<br>8th Floor South PMB #706<br>Boston, MA 02109<br>(703) 243-9423<br>patrick@consovoymccarthy.com |